**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Argelia Esther Mavy, | No. CV-25-00689-PHX-KML (ASB) |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On July 22, 2025, the Court issued an Order to Show Cause regarding Plaintiff's Opening Brief. (Doc. 16.) The Court did so because the Opening Brief was replete with citation-related deficiencies, including those consistent with artificial intelligence generated hallucinations. The Court ordered Plaintiff's counsel, Maren Bam, to show good cause as to why sanctions should not result. (*Id.*) On July 31, 2025, Plaintiff's counsel responded to the Order to Show Cause. (Doc. 17.) The issue is now ripe.

*Plaintiff, Ms. Mavy, is advised to read this Order and is particularly directed to its final two pages.*

## I.    BACKGROUND

Plaintiff, through her counsel, filed her Complaint on February 28, 2025. (Doc. 1.) Through counsel, Plaintiff filed her Opening Brief on May 27, 2025. (Doc. 13.) The Social Security Administration's Response Brief was filed June 12, 2025. (Doc. 15.) No Reply followed.

During its review of the Opening Brief, the Court discovered that the majority of

the cases cited by Plaintiff in her Opening Brief either did not exist, did not support the proposition for which they were cited, or misquoted or miscited the authority. It appeared to the Court that at least some of the purported cases were artificial intelligence hallucinations. *See United States v. Hayes*, 763 F. Supp. 3d 1054, 1065 (E.D. Cal. 2025) (identifying "the markings of a hallucinated case created by generative artificial intelligence (AI) tools," including case names that appear to be real but do not exist, and actual courts and dates). This Court issued its Order to Show Cause and directed Plaintiff's counsel to show good cause as to why sanctions should not issue under Rule 11 of the Federal Rules of Civil Procedure and this Court's Rules of Practice and Procedure ("Local Rules" or "LRCiv"). (Doc. 16.) The Court also reminded Plaintiff's counsel that proceeding *pro hac vice* in this District is a privilege, not a right. (*Id.* at 3-4.)

Plaintiff's counsel (hereinafter "Counsel" or "Ms. Bam") timely filed her Response to the Order to Show Cause ("OSC"). (Doc. 17.) In her Response, Counsel "acknowledges full responsibility for all filings submitted in this matter, including the Opening Brief." (*Id.* at 2.) Counsel further avers that after the Court issued its OSC, "a thorough review of the cited legal authorities in the Opening Brief" was undertaken, and "several case citations were either inaccurate or did not support the legal propositions for which they were cited." (*Id.*)

In her Response, Counsel states she is the "owner and signing attorney" of the firm that brought this litigation. (Doc. 17 at 2.) She outlines the general procedure for drafting filings, which involves a four-step process. First, Counsel screens all incoming cases for merit. (*Id.*) Second, the firm's managing paralegal assigns briefs to attorney brief writers. (*Id.*) Third, every brief "is reviewed by an on-staff supervising attorney" who "reviews the brief's legal arguments, formatting, and citations, and ensures the brief is legally sound." (*Id.*) To do this, "[t]he supervising attorney spot-checks the legal authorities and citations outlined in the brief." (*Id.* at 2-3.) Finally, Ms. Bam "personally" reviews and edits briefs for filing, "relying in good faith on the work of both the contracted attorney and the internal review process." (*Id.* at 3.)

Next, Counsel details the steps involved in submitting the Opening Brief in this case and submits exhibits to corroborate her assertions.  (Doc. 17 at 3-4.)  Counsel personally reviewed Plaintiff's claim and deemed it meritorious.  (*Id.* at 3.)  Second, Counsel's managing paralegal assigned the case to "the attorney contract writer."  (*Id.*)  Counsel underscores that the attorney who was contracted to author the Opening Brief in this case (hereinafter "Contractor"[1]) has strong qualifications to practice Social Security disability law.  (*Id.*)  After Contractor was assigned to write Plaintiff's Opening Brief, Counsel's firm forwarded to Contractor an announcement from the United States District Court for the District of New Mexico regarding the use of artificial intelligence ("AI") in drafting filings.  (*Id.* at 3, Doc. 17-3.)  The announcement stated:

> This bulletin serves as a critical reminder to all litigants of their obligations under Rule 11 of the Federal Rules of Civil Procedure to ensure all legal contentions are warranted by existing law, especially in light of the increasing use of AI in preparing motions and other filings.  While acknowledging the potential benefits of AI, the Court has observed instances of AI-generated arguments and citations to non-existent cases, a practice that is strictly prohibited and may result in sanctions to uphold the integrity of the judicial system.

(Doc. 17-3)  When it sent the announcement to Contractor, Counsel's firm noted that the announcement "applies for every jurisdiction as the courts are cracking down on the use of artificial intelligence."  (*Id.*)  Contractor was requested by the firm to acknowledge receipt of the announcement, and Contractor did so.  (Doc. 17-4.)

Contractor submitted the drafted Opening Brief to an attorney employed by Counsel's firm who supervises contracted brief writers (hereinafter "Attorney-Supervisor").  (Doc. 17 at 3.)  Counsel subsequently reached out to Attorney-Supervisor to check on the brief's progress, and Attorney-Supervisor responded that she was nearly finished editing it.  (*Id.* at 4, Doc. 17-6.)  Attorney-Supervisor reported to Counsel that Contractor's arguments were "great," but she also observed that Contractor "included an

---

[1] In her Response to the Order to Show Cause and supporting exhibits, Counsel redacts the names of other attorneys involved in drafting and editing the Opening Brief.  (*See* Docs. 17, 17-1 through 17-12.)  The Court does not take issue with this approach, as Rule 11 applies to the signing attorney.  *See* Fed. R. Civ. P. 11.

improper medical opinion evaluation and the supportability/consistency analysis wasn't flushed (sic) out." (Doc. 17-6.) Other, non-citation-related deficiencies were noted. (*See id.*) Attorney-Supervisor ended her email by stating it was her birthday weekend, so she would finish editing on the next business day. (*See id.*) Counsel responded to Attorney-Supervisor that they were "not on the same page" and the brief was late. (Doc. 17 at 4, Doc. 17-7.) Counsel set a meeting to discuss further, and Attorney-Supervisor responded she was experiencing some health struggles and assured Counsel she understood Counsel's expectations. (*See* Docs. 17-7, 17-8.) Finally, Counsel and Attorney-Supervisor "discussed the brief, reviewed it prior to signing and submission, and it was" filed. (Doc. 17 at 4.)

In her Response, Counsel states, "Neither I nor the supervising staff attorney knowingly submitted false or non-existent citations to the Court. The brief writer in question was experienced and credentialed, and we relied on her professionalism and prior performance. At no point did we intend to mislead the Court or submit citations not grounded in valid legal authority." (Doc. 17 at 5.) Nonetheless, Counsel takes responsibility for the content of the Opening Brief. (*Id.*) In addition, Counsel outlines the procedures that will be followed within her firm to avoid recurrence of this problem, including requiring all brief writers to provide research logs and requiring all supervising/reviewing attorneys to check each citation. (*See id.*) Counsel reports Contractor's contractual relationship with Counsel and her firm has ended. (*Id.* at 5.)

Counsel asks the Court to refrain from imposing sanctions. (Doc. 17 at 5.) Counsel further implores the Court not to revoke Counsel's *pro hac vice* status because doing so would reduce Social Security claimants' access to the courts. (*See id.* at 5-6.) Counsel points the Court to Exhibit 13, a "citation correction table identifying the problematic citations, their intended propositions, and the accurate authorities that should have been cited." (*Id.* at 6.) Counsel further requests leave to file an Amended Opening Brief. (*Id.*)

//

//

- 4 -

1    **II.    APPLICABLE LAW**

2        Rule 11(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

3        By presenting to the court a pleading, written motion, or other paper—
         whether by signing, filing, submitting, or later advocating it—an attorney or

4        unrepresented party certifies that to the best of the person's knowledge,
         information, and belief, formed after an inquiry reasonable under the

5        circumstances:

6        …

7        (2) the claims, defenses, and other legal contentions are warranted by existing
         law or by a nonfrivolous argument for extending, modifying, or reversing

8        existing law or for establishing new law.

9    Thus, under Rule 11, a signature on a filing "certifies to the court that the signer has read

10   the document, has conducted a reasonable inquiry into the facts and the law and is satisfied

11   that the document is well grounded in both, and is acting without any improper motive."

12   *Bus. Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.*, 498 U.S. 533, 542 (1991).

13   Accordingly, "any party who signs a pleading, motion or paper" has "an affirmative duty

14   to conduct a reasonable inquiry into the facts and the law before filing." *Id.* at 551. "[T]he

15   applicable standard is one of reasonableness under the circumstances." *Id.*

16       "Courts must apply an objective test in assessing whether the rule has been

17   violated." *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) (citing *Zaldivar v.*

18   *City of Los Angeles*, 780 F.2d 823, 829-32 (9th Cir. 1986), *abrogated on other grounds*,

19   496 U.S. 384 (1990)). "A violation of the rule does not require subjective bad faith." *Id.*

20   (citing *Zaldivar*, 780 F.2d at 829-32). If Rule 11 is found to have been violated, sanctions

21   may be imposed. Fed. R. Civ. P. 11(c).[2]

22       //

23       //

24   _____

[2] Counsel has not challenged undersigned's authority to consider Rule 11. (*See* Doc. 17.)

25   However, for clarity of the record, undersigned is within her authority to consider whether
     Rule 11 has been violated and, when appropriate, to impose sanctions. This matter has

26   been referred to the undersigned "for all pretrial proceedings." (Doc. 9.) This authority
     falls under 28 U.S.C. § 636(b)(1)(A). *See also* LRCiv 72.1(a); *Maisonville v. F2 Am., Inc.*,

27   902 F.2d 746, 747 (9th Cir. 1990) (finding Magistrate Judge's *sua sponte* consideration of
     Rule 11 and imposition of non-dispositive Rule 11 sanctions appropriate under statutory

28   authority); *Dehghani v. Castro*, --- F.Supp.3d ---, 2025 WL 1361765 (D. N.M. May 9,
     2025) (same where use of fictitious citations occurred). This Order is not dispositive of
     this case.

## III.    ANALYSIS

It is helpful to begin with an overview of the citation-related deficiencies in the Opening Brief.  Case citations begin on page 13 of that Brief, and they are summarized as follows:

| | Opening Brief page number | Case cited (reprinted here exactly as it appears in the Opening Brief) | Court's observations |
|---|---|---|---|
| 1 | 13 | *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) | Case exists.  Quote is correct. |
| 2 | 16 | *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) | Case exists.  Quoted language does not exist in case. Counsel writes that in *Revels*, "the court held that fibromyalgia symptoms are 'entirely subjective' and must be evaluated accordingly." Although *Revels* discusses at length consideration of evidence in fibromyalgia cases, and thus the proposition is generally correct, *Revels* contains no such quoted language. |
| 3 | 16 | *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) | Case exists.  Proposition is correct. |
| 4 | 16 | *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) | Case exists.  Proposition is incorrect. Counsel states that *Garrison* at p. 1016 "require[s] an RFC to reflect all impairments in combination." *Garrison* does not contain such a requirement at p. 1016.  The cited page addresses activities in daily living and pain testimony. |
| 5 | 17 | *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003) | Case exists.  Proposition is generally correct. |
| 6 | 17 | *Barrett v. Astrue*, 340 F. App'x 481, 483 (9th Cir. 2009) | Citation is correct, except it is a Tenth Circuit case.  The proposition is incorrect. Counsel states *Barrett* "remand[ed] because ALJ did not properly assess the impact of claimant's obesity on her fibromyalgia and degenerative disc disease," but *Barrett* case makes |

| | | | no mention of obesity, fibromyalgia, or disc disease. |
|---|---|---|---|
| 7 | 18 | *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) | Case exists. Proposition is incorrect. Counsel writes that *Orn* "require[es] the ALJ to explain how impairments are accommodated in the RFC." *Orn* contains no such requirement at p. 639. |
| 8 | 19 | *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) | Case exists. Quote is mostly correct. Counsel does not attribute the internally quoted and cited language properly, and the quotation omits a word, but those issues would not serve as a basis for a R.11 violation. |
| 9 | 19-20 | *Revels*, 874 F.3d 663 | Case exists. Quote is incorrect. Counsel states: "As the Ninth Circuit explained in *Revels*, 874 F.3d 663 '[t]he symptoms of fibromyalgia are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.'" Although *Revels* contains quoted language from *Benecke* that is similar, no such quoted language appears in *Revels*. |
| 10 | 20 | *Garrison v. Colvin*, 759 F.3d 1016 | Case exists. Quoted language partially exists. Counsel includes the following quoted language as a parenthetical to this cite to *Garrison*: ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former…and can rest whenever needed.") Before the ellipsis, the quoted language is correct, but the quoted language appears in *Garrison* as a parenthetical to a 7th Circuit case. (This alone is not a basis for a R.11 violation.) The latter portion of the quoted language is found nowhere in *Garrison*. |
| 11 | 20 | *Smolen v. Chater*, 80 F.3d 1273, 1287 (9th Cir. 1996) | Case exists. Cited page number is incorrect. Rather than appearing at p. |

| | | | 1287, it appears the proposition is supported by p. 1284 at n. 7. |
|---|---|---|---|
| 12 | 20 | *Hobbs v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00613-PHX-MTL, 2021 WL 3082823, at *4 (D. Ariz. July 21, 2021) | Case does not exist. |
| 13 | 20 | *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) | Case exists. Quoted language does not exist in case.<br>Counsel writes that the 9th Circuit stated in *Lingenfelter*: "The fact that a claimant's pain is treated with narcotic medication is not inconsistent with his testimony of disabling pain." No such quote is found in *Lingenfelter*. |
| 14 | 20-21 | *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) | Case exists. Proposition is incorrect. Counsel states that *Trevizo* "requir[es] consideration of waxing and waning nature of impairments." *Trevizo* contains no such discussion or requirement. |
| 15 | 21 | *Brink v. Comm'r of Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009 | Case exists. Quote is slightly incorrect, but proposition is arguably inapposite.<br>Counsel quotes the Circuit as discussing "simple, repetitive tasks," when the Circuit repeatedly used the phrase "simple, repetitive work." However, as Counsel notes in Exhibit 13, the proposition for which *Brink* is cited concerns simple, routine tasks, and Counsel suggests replacing this citation with a different one. (Doc. 17-13 at 2.) |
| 16 | 21 | *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) | Case exists. Quoted language does not exist in the case.<br>Counsel writes that in *Lubin*, the Circuit "held that an ALJ may not 'simply disregard a moderate limitation in concentration, persistence, or pace without explanation.'" That language does |

| | | | not appear in *Lubin*. *Lubin*, however, states that the ALJ erred by not including those limitations in the RFC determination or in the hypothetical question to the vocational expert. |
|---|---|---|---|
| 17 | 22 | *Brown v. Colvin*, No. CV-14-02335-PHX-JZB, 2016 WL 11247214, at *6 (D. Ariz. Jan. 22, 2016) | Case does not exist. |
| 18 | 22 | *Wofford v. Berryhill*, No. CV-17-08146-PCT-DLR, 2018 WL 4658701, at *4 (D. Ariz. Sept. 28, 2018) | Case does not exist. |
| 19 | 23 | *Garrison*, 759 F.3d 1017 | Case exists. Counsel states that *Garrison* "hold[s] ALJ must connect symptoms to functional limitations in the RFC." No such express holding is found on p. 1017, but the proposition is arguably supported. |

Therefore, of the 19 instances of citations included in Plaintiff's Opening Brief, 5 to 7 of those cases exist <u>and</u> appear as quoted or generally stand for the proposition for which they are cited. Put another way, well over the majority of the citations provided to this Court in Plaintiff's Opening Brief were fabricated, misleading, or unsupported.[3]

Notably, Counsel has not explicitly admitted to using AI to prepare her Opening Brief. Instead, Counsel points to Contractor's similar failure to make such an admission and states "the inability to verify the sources raised concerns that AI-generated text may have been improperly included in the draft." (Doc. 17 at 4.) In Exhibit 13 to the Response to the Order to Show Cause, in the column "Issue Identified," the three non-existent cases are described as "[l]ikely fabricated by artificial intelligence." (Doc. 17-13 at 1-3.)

---

[3] Defendant did not raise any the above issues in the Answering Brief. (*See* Doc. 15.) Indeed, the only issue with any citation raised by Defendant was Plaintiff's citation to *Revels* on page 13 of the Opening Brief. (*See id.* at 14.) Defendant noted that *Revels* relied on prior regulations and therefore was inapposite. (*Id.*) It is unclear to the Court why Defendant did not raise any of the deficiencies identified in the table above, particularly with respect to cases that simply did not exist, but the Court focuses this Order on Plaintiff's Counsel's conduct.

1   Similarly, Counsel states she has implemented new procedures to ensure this issue does
2   not recur, and those procedures include an "AI policy." (Doc. 17 at 5.) Thus, the Response
3   concedes those errors are "likely" hallucinations, and no other explanation for the many
4   deficient and non-existent citations has been provided to the Court. "A citation to one non-
5   existent case may be a mere mistake. But here, the fact that all three citations are non-
6   existent suggests [] counsel may have used artificial intelligence to draft the motion and
7   failed to confirm the accuracy of the citations." *Strike 3 Holdings, LLC v. Doe*, 2025 WL
8   882212, at *3 (C.D. Cal. Jan. 22, 2025).

9       This Court, however, "need not make any finding as to whether [Counsel or her
10  subordinate] actually used generative AI to draft any portion of" her Opening Brief to
11  conduct its analysis here. *Hayes*, 763 F. Supp. 3d at 1066-67 (citing *Grant v. City of Long*
12  *Beach*, 96 F.4th 1255, 1256-57 (9th Cir. 2024) (without determining source of two non-
13  existent case citations and misrepresentation of thirteen cases, striking opening brief and
14  dismissing appeal where opening brief "represents a material failure to comply with our
15  rules").) Such a finding is not required because "[c]iting nonexistent case law or
16  misrepresenting the holdings of a case is making a false statement to a court. It does not
17  matter if [generative AI] told you so." *Id.* at 1067 (quoting Maura R. Grossman, Paul W.
18  Grimm, & Daniel G. Brown, *Is Disclosure and Certification of the Use of Generative AI*
19  *Really Necessary?*, 107 JUDICATURE 68, 75 (2023)) (bracketed language in original).
20  Because the Opening Brief's fictitious citations contain "all the markings of a hallucinated
21  case created by" AI, including a name of a case that appears real, identification to an actual
22  court with an actual Judge's initials, and a date, *see id.* at 1065, and because no other
23  explanation for the fabricated citations was given to the Court, the Court has considered
24  case law pertaining to AI and Rule 11.

25      In Counsel's timeline of events leading to the filing of the Opening Brief, Counsel
26  writes that Counsel and Attorney-Supervisor "discussed the brief, reviewed it prior to
27  signing and submission, and it was sent to the supervising paralegal for filing." (Doc. 17
28  at 4.) Due to the majority of the citations being either inaccurate or non-existent, it is

apparent to the Court that Counsel did not review the citations.  Thus, although Counsel does not expressly admit her review failed, it plainly did.  It stands to reason that if Counsel had reviewed the Brief she was signing her name to, she would have removed fictitious, misleading, and unsupported citations.  It is equally apparent that Attorney-Supervisor did not follow the firm's "internal review" process outlined in the Response to the Order to Show Cause.  (*See id.* at 2-3) (mentioning checking authorities and citations).  Failures occurred at every level of Counsel's identified process – a process that Counsel herself describes as "ensur[ing] legal integrity and compliance with FRCP 11."  (*Id.* at 2.)

Of further note, Counsel's Response to the Order to Show Cause does not contain a single citation to any controlling authority regarding Rule 11.  (*See* Doc. 17.)  Instead, Counsel states she takes full responsibility while also repeatedly emphasizing that she relied on others to prepare the Opening Brief that she alone signed.  (*See id.*)  Counsel's dearth of citations in her Response is unfortunate, particularly given that the controlling authority clearly holds (as is discussed, *infra*) that Rule 11 duties are non-delegable.

### 1.  Violation of Rule 11(b)(2)

The Court has spent a considerable amount of time researching the burgeoning body of case law exploring conduct similar to that in this case.  In the first published federal appellate case addressing this issue, the Second Circuit observed that "[a]t the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely. Indeed, we can think of no other way to ensure that the arguments made based on those authorities are 'warranted by existing law,' Fed. R. Civ. P. 11(b)(2), or otherwise 'legally tenable.'" *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).  The Second Circuit concluded that an attorney's "submission of a brief relying on non-existent authority reveals that she failed to determine that the argument she made was 'legally tenable.'"  *Id.*  The Court similarly found that the attorney's filing presented "a false statement of law to" the court and that the attorney had failed to make any inquiry into the validity of her arguments, "much less the reasonable inquiry required by Rule 11

and long-standing precedent."  *See id.*

Other courts around the country have arrived at the same conclusion, not only with respect to citations to non-existing cases that were fabricated by AI, but also to citations to cases that did not stand for the propositions put forth.  *See e.g.*, *Dehghani v. Castro*, --- F. Supp. 3d ---, 2025 WL 1361765, at *4-5 (D. N.M. May 9, 2025) (collecting cases and affirming magistrate judge's order finding Rule 11 had been violated), *Johnson v. Dunn*, --- F. Supp. 3d ---, 2025 WL 2086116, at *19-20 (N.D. Ala. Jul. 23, 2025) (collecting cases concerning hallucinated cases), *and Elizondo v. City of Laredo*, 2025 WL 2071072, at *2-3 (S.D. Tex. Jul. 23, 2025) (collecting cases addressing misrepresentations of law and hallucinated cases).

After considering the volume of ever-expanding case law and the particular facts of this case, the Court finds that Counsel violated Rule 11(b)(2).  By repeatedly citing this Court to non-existent "cases" and to actual cases that did not support the propositions for which they were cited, Counsel failed to conduct any review whatsoever that those cases were valid or that the arguments she was making were legally tenable.  That conduct squarely runs afoul of Rule 11's mandate.

Moreover, Counsel's emphasis on the fact that she relied on other attorneys who drafted and edited her Opening Brief (*see* Doc. 17 at 3-5) is unavailing.  Under Rule 11, "the signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment."  *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 125 (1989).  That duty cannot be delegated.  *Id.*; *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986), *overruled on other grounds by In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) ("An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry."); *see also, e.g.*, *Elizondo*, 2025 WL 2071072, at *2-3 (finding violation of Rule 11(b)(2) where counsel relied on unsupervised law clerk's use of AI) *and Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495-

96 (D. Wyo. 2025) (finding violation of Rule 11(b)(2) when local counsel signed *pro hac vice* counsel's brief containing AI-generated citations without verifying their validity).

While Counsel acknowledges in her Response that she bears responsibility as the signing attorney, Counsel's other language in the Response deflects that responsibility. For example, she states "the inclusion of improper citations was unintentional." (Doc. 17 at 6.) This statement completely misses the mark. Counsel signed the Opening Brief. Counsel did not verify the accuracy of any of her citations. Counsel's decision to completely cede the accuracy of her Brief to other lawyers was intentional. Her subsequent decision to signify accuracy by signing her Brief, when she clearly had not verified its contents, was intentional. Her actions were plainly impermissible under Rule 11.

Therefore, the Court finds that Counsel violated Rule 11. Consequently, the Court considers whether sanctions should be imposed.

### 2. Sanctions

If the Court finds an attorney has violated Rule 11(b), the Court "may impose an appropriate sanction" after the Court has provided that attorney "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999) (requiring notice and opportunity to respond before imposing sanctions). "[A]n opportunity to be heard does not require an oral or evidentiary hearing on the issue." *Pac. Harbor Cap., Inc., v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). "Rule 11 sanctions may be imposed only in response to claims that are not 'warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law.'" *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (quoting Fed. R. Civ. P. 11(b)(2)). "This standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion[;] ... *sua sponte* sanctions 'will ordinarily be imposed only in situations that are akin to a contempt of court.'" *Id.* (quoting *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1999)) (alteration omitted). "Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.'" *Est. of Blue v. Cnty. of Los Angeles*, 120

1    F.3d 982, 985 (9th Cir. 1997) (quoting *Buster v. Griesen*, 104 F.3d 1186, 1190 (9th Cir.

2    1997)).

3         In the case at bar, the Court provided Counsel with notice and the opportunity to be

4    heard.  (Docs. 16, 17.)  After considering dozens of similar cases across the country,

5    controlling authority, and Counsel's actions in this case, the Court finds that Rule 11

6    sanctions are appropriate.  As detailed *supra*, Plaintiff's Opening Brief is riddled with

7    fabricated, misleading, or unsupported citations.  This situation is indeed akin to contempt

8    of court.  Left with the surviving authority, entire sections of the filing's "Analysis" are

9    nearly wholly unsupported, and clearly, there was no reasonable inquiry made into its

10   contents.  (*See* Doc. 13.)

11        "The district court has wide discretion in determining the appropriate sanction for a

12   Rule 11 violation."  *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir.

13   1987) (citing *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th

14   Cir. 1986)).  "A sanction imposed under this rule must be limited to what suffices to deter

15   repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ.

16   P. 11(c)(4).

17        Sanctions for Rule 11 violations involving citations to non-existent case law and

18   misrepresenting the facts and holdings of cases have included, *inter alia*, monetary

19   sanctions, striking filings, and referral to disciplinary authorities (or a combination

20   thereof).  *See, e.g.*, *Dehghani*, 2025 WL 1361765, at *4-5 (collecting cases and affirming

21   monetary penalty and referral to licensing authorities); *Jackson v. Auto-Owners Ins. Co.*,

22   2025 WL 1932274, at *5 (M.D. Ga. Jul. 14, 2025 (collecting cases imposing sanctions);

23   *and ByoPlanet, Int'l, LLC v. Johansson*, --- F. Supp. 3d ---, 2025 WL 2091025, at *7-8

24   (S.D. Fla. Jul. 17, 2025) (considering sanctions where lawyer, *inter alia*, relied on paralegal

25   who had used AI to draft filings, including in response to an order to show cause about the

26   use of AI, and did not review paralegal's work); and *Hayes*, 763 F. Supp. 3d at 1071-72

27   (collecting cases imposing sanctions under a variety of authority, including Rule 11).  In a

28   seminal federal case on this issue, where counsel cited the Court to fabricated cases

1  generated by AI, the district court ordered monetary sanctions and directed counsel to send

2  a letter to "to each judge falsely identified as the author of the fake [] opinions" cited. *Mata*

3  *v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D. N.Y. 2023).  In *Wadsworth*, the district

4  court revoked counsel's *pro hac vice* status and imposed a monetary fine.  348 F.R.D. at

5  497-98; *but see, e.g., Benjamin v. Costco Wholesale Corp.*, --- F. Supp. 3d ---, 2025 WL

6  1195925, at *9 (E.D. N.Y. Apr. 24, 2025) (imposing monetary sanctions and declining to

7  revoke *pro hac vice* status and refer to disciplinary authority due to counsel's contrition)

8  *and Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters.*, LLC, 2025 WL

9  1440351, at *6 (S.D. Fla. May 20, 2025) (electing not to revoke *pro hac vice* status where

10 counsel submitted a single fabricated citation and was remorseful).  In other matters,

11 monetary sanctions and requirements to complete CLE training on the responsible use of

12 AI were imposed.  *See, e.g., Gauthier v. Goodyear Tire & Rubber Co.*, 2024 WL 4882651,

13 at *3 (E.D. Tex. Nov. 25, 2024) *and Versant*, 2025 WL 1440351, at *7.

14      The Court notes that in some recent cases dealing with fabricated citations, district

15 courts have openly questioned whether monetary sanctions alone suffice.  For example, in

16 *Johnson v. Dunn*, the district court observed that a fine and public reprimand were

17 "insufficient," because if they "were effective deterrents, there would not be so many cases

18 to cite."  --- F. Supp. 3d ---, 2025 WL 2086116, at *20 (N.D. Ala. Jul 23, 2025).[4]  That

19 court's point is well-taken.  There, the court reprimanded counsel, disqualified them, and

20 referred them to their respective licensing authorities.  *Id.*

21      Finally, the Court observes that in *Grant v. City of Long Beach*, where counsel "filed

22 an opening brief replete with misrepresentations and fabricated case law," the Ninth Circuit

23 struck the brief and dismissed the appeal for failing to comply with the Federal Rules of

24 Appellate Procedure.  96 F.4th at 1256-57.  In so doing, the Ninth Circuit observed that

25 once only the accurate citations remained for consideration, what was left was "of little use

---

[4] The *Johnson* court imposed sanctions pursuant to the court's inherent authority, rather than Rule 11, as the court concluded Rule 11 did not apply to the discovery motions that contained AI-generated citations.  *Id.* at *14-17.  Indeed, the court noted "if these motions had not been discovery motions, [counsel's] conduct would have been a textbook Rule 11 violation."  *Id.* at *17.  In this case, Rule 11 applies, as discussed above.

1    to" the court.  *Id.* at 1257.  While not a Rule 11 case, it is notable in that the Circuit struck
2    a pleading due to it being unsupported by the surviving, legitimate citations.

3        In the case at bar, the Court considers Counsel's actions when determining what
4    sanctions are sufficient, but not greater than necessary, to achieve the aims of Rule 11(c)(4).
5    At the outset of this analysis, the Court recognizes that Counsel was contrite in her
6    Response to the Order to Show Cause.  While she clearly cast blame on her subordinates,
7    she ultimately took responsibility for the Opening Brief and its many deficiencies.  (*See*
8    Doc. 17.)  Contrary to other cases, *see, e.g., Mata*, 678 F. Supp. 3d 443, she did not attempt
9    to "double-down" on the citations' validity and she was not recalcitrant.  "But regret and
10   apologies are not necessarily enough to avoid the imposition of sanctions for the
11   submission of non-existent legal authority."  *Benjamin*, 2025 WL 1195925, at *7.  And
12   indeed, as detailed *supra*, Counsel not only submitted multiple fake cases (and attributed
13   them to Judges of this Court), but she cited to many other cases that did not support the
14   purported propositions or were otherwise misleading or misquoted.  Further, it was not
15   Counsel who disclosed these deficiencies to the Court after initially filing her Opening
16   Brief; rather, it was the Court that had to point out the issues to Counsel.  And it was only
17   after the Court entered its Order to Show Cause that Counsel sought to file an Amended
18   Opening Brief.

19       For many reasons, the Court declines Counsel's invitation to forego sanctions and
20   allow Counsel to file an Amended Opening Brief.  First, such a result would not be
21   proportionate to the violation of Rule 11 present in this case.  This is not an instance where
22   a single fabricated case was included in a brief.[5]  This is a case where the majority of
23   authorities cited were either fabricated, misleading, or unsupported.  That is egregious.

24       Second, the pitfalls of utilizing AI are now well-known in this profession.  *See*
25   *Johnson*, 2025 WL 2086116, at *11 ("In the few years that generative AI has affected court
26   filings, it has become well established that '[m]any harms flow from the submission of fake

27
28   _____
     [5] Even a single fabricated citation would be serious.  Indeed, other courts have imposed
     Rule 11 sanctions in such an instance.  *See, e.g., Versant Funding*, 2025 WL 1440351, at
     *1-2, 6-7.  This Court is not minimizing the use of a single fake case.

opinions.'") (quoting *Mata*, 678 F. Supp. 3d at 448, and collecting cases) (brackets in *Johnson*).  Indeed, before submitting her Opening Brief in this case, Counsel had directed another district court's warning about the proper usage of AI to attorneys who wrote briefs for her, noting that courts were "cracking down" on its use.  (Doc. 17 at 3, Doc. 17-3.)  And yet, despite this warning and her knowledge about at least one court's admonishment regarding AI and verification of citations, Counsel herself took no discernible steps to verify the accuracy of the filing she submitted in this case.

Third, with respect to Counsel's request in her Response to simply allow her to file an Amended Opening Brief with corrected citations, "the court rejects the invitation to consider that actual authorities stand for the proposition that the bogus authorities were offered to support. That is a stroke of pure luck for these lawyers, and one that did not remediate the waste and harm their misconduct wrought. Further, any sanctions discount on this basis would amplify the siren call of unverified AI for lawyers who are already confident in their legal conclusion. This court will have no part of that." *Johnson*, 2025 WL 2086116, at *16.  This Court echoes that sentiment.[6]

Fourth, this entire litigation has been derailed by Counsel's actions.  Instead of undersigned providing a Report and Recommendation to the District Judge on the merits of this matter, "the Court has been left with no choice but to survey the case law regarding attorney misconduct relating to the use of AI" – undoubtedly, "a waste of the Court's resources." *Benjamin*, 2025 WL 1195925, at *7; *see also Johnson*, 2025 WL 2086116 at *11 ("While the court takes time to investigate, other cases may be disrupted or deprived of judicial attention.").

Fifth, Counsel cited three fictitious cases that were attributed to three Judges of this Court:  Hon. Douglas L. Rayes, Hon. Michael T. Liburdi, and Hon. John Z. Boyle.  (Doc. 13 at 20, 22.)  It is unclear what the fallout will be from those fake cases with those Judges' initials attached to them, and "[t]here is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the

---

[6] The Court notes it has not verified that the citations included in the proposed Amended Opening Brief support the propositions stated therein.

reputation of a party attributed with fictional conduct." *Mata*, 678 F. Supp. 3d at 448. And that leads the Court to a final, critical point: the use of fake opinions "promotes cynicism about the legal profession and the American judicial system." *Id.*

To be clear, this Court is not opposed to the responsible use of AI in our profession. But "a lawyer who wishes to use AI ethically must ensure that the legal propositions and authority generated are trustworthy. The lawyer has a duty to check all the cases and quotations for accuracy. Anything less is to abdicate one's duty, waste legal resources, and lower the public's respect for the legal profession and judicial proceedings." *ByoPlanet*, 2025 WL 2091025, at *2. Counsel's actions in this case are yet another glaring example – not only were fictitious, misleading, and unsupported citations used, but Counsel failed to adequately supervise the attorneys working for her to ensure her Opening Brief's accuracy. Essentially, Counsel's "defense" in her Response boils down to, "I did not know AI was likely used, much less misused." (*See* Doc. 17.) But that defense rings completely hollow, because Counsel had a duty to know by reviewing the document before signing her name to it. Her decision to knowingly sign a brief that she had not meaningfully reviewed was hers and hers alone.

After carefully considering Counsel's conduct in this case, as well as sanctions imposed by other courts for similar conduct, the Court finds the below sanctions are the least severe necessary to satisfy Rule 11(c)(4). *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). While the Court is somewhat heartened by Counsel's statement that she has implemented heightened procedures at her firm to ensure this conduct is not repeated (*see* Doc. 17 at 5), it bears emphasizing that the record clearly establishes Counsel herself failed to follow the review process she had in place for the purpose of "compliance with FRCP11" (*see id.* at 2-3) in the preparation of the Opening Brief. In other words, policies regarding review are important, but at the end of the day, they are only effective if they are followed. Consequently, in fashioning these sanctions, deterrence is a paramount consideration for this Court:

1. The *pro hac vice* status of Counsel shall be revoked and Counsel will be removed from this case;

2. Plaintiff's Opening Brief shall be stricken;

3. Counsel will be ordered to promptly serve a copy of this Order on Plaintiff, who will in turn be afforded time to engage new counsel or proceed as a self-represented litigant;

4. Counsel will be ordered to write a letter to the three Judges to whom she attributed fictitious cases, Hon. Douglas L. Rayes, Hon. Michael T. Liburdi, and Hon. John Z. Boyle, notifying them of her use of fake cases with their respective names attached;

5. Counsel will be ordered to transmit a copy of this Order to every Judge who presides over any case in which Counsel is attorney of record; and

6. The Clerk of Court's Office will be directed to serve a copy of this Order on the Washington State Bar Association, of which Counsel is a member.[7] If Counsel is a member of any other state's bar, she shall serve a copy of this Order on that state's bar office.

First, revocation of Counsel's *pro hac vice* status is appropriate in this circumstance. *See* LRCiv 83.1(b)(2) (concerning admission *pro hac vice* before this Court and requiring attorneys so admitted to comply with the Local Rules) *and* LRCiv83.1(f)(1)(A) (permitting sanctions against attorneys who fail to comply with the Federal Rules of Civil Procedure); *see also Wadsworth*, 348 F.R.D. at 497-98. As another Judge of this Court has stated, and as this Court quoted in its Order to Show Cause: "Admission *pro hac vice* to this Court is a privilege, not a right, and can be revoked for failure to conform to the applicable federal

---

[7] (Doc. 1 at 3, listing "WSB No. 46624" after Counsel's name); Washington State Bar Assoc. "Legal Profile – Maren Ann-Miller Bam", https://www.mywsba.org/PersonifyEbusiness/LegalDirectory/LegalProfile.aspx?Usr_ID= 000000046624 (last visited Aug. 13, 2025). Counsel's conduct would seem to implicate various Washington State Court Rules of Professional Conduct, including RPC 1.1 (Competence), RPC 3.1 (Meritorious Claims and Contentions), RPC 3.3 (Candor Toward the Tribunal), and RPC 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers), but the Court of course takes no position on another jurisdiction's disciplinary process. The Washington State Bar Association will proceed as it deems appropriate.

and local rules and follow all orders of the Court."  (Doc. 16 at 3-4) (quoting *Takeover Indus. Inc. v. Holley*, No. CV-22-00357-PHX-JJT, 2022 WL 19575806, at *1 (D. Ariz. April 28, 2022) (citing LRCiv 83.1(f)(1)(A)).)  In her Response to the Order to Show Cause, Counsel states her firm "serves a national population" in its Social Security practice, indicating that Counsel and her firm routinely proceed *pro hac vice*.  (*See* Doc. 17 at 5.) Thus, as an attorney who routinely appears in jurisdictions around this country under *pro hac vice* status, Counsel is keenly aware of the benefits (and responsibilities) of that privilege.  By failing to personally review her Opening Brief before signing it, Counsel undoubtedly abused that privilege.

Second, Plaintiff's Opening Brief will be ordered stricken.  After excising the deficient citations and their purported propositions, what is left of the Opening Brief is "of little use to" the Court. *See Grant*, 96 F.4th at 1256-57 (striking an opening brief due to being unsupported by the surviving, legitimate citations).  However, the Court is bound to impose the least restrictive sanctions under Rule 11.  Because the Court recognizes that this Order will result in there being no operative Opening Brief, the Court will order Counsel to serve a copy of this Order on Plaintiff, and the Court will allow Plaintiff additional time to engage new counsel or represent herself.  Plaintiff will be afforded 45 days from the date she is served with this Order to either (a) have new counsel file a Notice of Appearance or (b) file a Notice with the Court stating that she will proceed self-represented.  Once either Notice is filed, the Court will enter an amended scheduling order.

In addition, the Court will require Counsel to send a copy of this Order to every Judge who is presiding over any case in which Counsel is attorney of record.  *See, e.g., Johnson*, 2025 WL 2086116, at *21 (ordering counsel to provide a copy of the court's order to every presiding judge in every state or federal case in which they were attorney of record), *and Jackson*, 2025 WL 1932274, at *6 (directing clerk of court to provide to all chief judges in a judicial district's state where the record established counsel litigated throughout the entire state).  Exhibit 5 to Counsel's Response to the Order to Show Cause indicates Contractor was tasked with drafting filings in other matters, and the specifics

about those matters were redacted. (*See* Doc. 17-5.) Counsel has indicated she has a nationwide practice, and the remedial measures described in the Response to Order to Show Cause do not include any suggestion that Contractor's other written work was reviewed for similar issues. (*See* Doc. 17 at 5-6.) To mitigate potential harms in other cases, and to afford deterrence, this sanction is warranted. The Court underscores that this sanction is not limited to cases pending in this District; the Court's directive applies to any case in which Counsel is attorney of record across the United States.

Regarding the three Judges to whom Counsel attributed non-existent cases, Counsel will be ordered to alert those Judges of same. This sanction represents the Court's effort to minimize potential harms of those fictitious cases to those jurists, *see Mata*, 678 F. Supp. 3d at 466, and to deter Counsel from future instances of similar conduct.

Finally, the Court will direct the Clerk of Court to report this discipline imposed against Counsel to the state bar licensing authority of which the Court is aware Counsel is a member. *See* LRCiv 83.1(f)(2)(F); *see also ByoPlanet*, 2025 WL 2091025, at *11 (referring counsel to state bar) *and Hayes*, 463 F. Supp. 3d at 1073. The Court will require Counsel to self-report to any other state bar through which Counsel is licensed. *See* LRCiv 83.1(f)(2)(F); *see also Dehghani*, 2025 WL 1361765, at *5 (finding Magistrate Judge "was well within his discretion in ordering" counsel to self-report to state bars).

Thus, the above sanctions are those the Court finds appropriate pursuant to Rule 11. This Court considered dismissal as a possible sanction, and had it determined dismissal to be appropriate, it would have instead issued a Report and Recommendation recommending same to the assigned District Judge. However, pursuant to Rule 11(c)(4), the Court finds dismissal too harsh and does not recommend it be imposed as a sanction.

The Court recognizes that it also has inherent authority to sanction Counsel. "The Court's inherent power is derived from the Court's need 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Versant Funding*, 2025 WL 1440351, at *3 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (bracketed language in *Versant*)). "[T]he district court has the inherent authority to impose sanctions

for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  The Court does not go so far as to find Counsel acted with subjective bad faith, and indeed its Order to Show Cause focused on Rule 11 and the Local Rules.  (*See* Doc. 16); *see also Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").  As detailed *supra*, however, Counsel's actions rise to the level of Rule 11 sanctions.

### 3. Cautionary Note

Finally, the Court would be remiss if it did not note its concern about Counsel's review of her Opening Brief when creating Exhibit 13 to her Response to the Order to Show Cause.  This section is separate from the Court's above analysis and imposition of sanctions; in other words, the concern detailed below did not result in the sanctions imposed above.

Counsel avers in her Response to the Order to Show Cause that after she received the Order to Show Cause, "counsel conducted a thorough review of the cited legal authorities in the Opening Brief." (Doc. 17 at 2.)  Counsel provides the Court with Exhibit 13, which purports to be "a citation correction table identifying the problematic citations, their intended propositions, and the accurate authorities that should have been cited." (*Id.* at 6.)  However, that Exhibit does not tell the whole picture.  For example, the first "problematic" case listed in Exhibit 13 is *Barrett v. Astrue*. (Doc. 17-13 at 1.)  As detailed *supra*, though, the first case cited by Counsel in the Opening Brief, *Revels*, did not contain the quoted language that Counsel claimed it did.  (Table, *supra*, page 5, at entry 2.)  Next, Counsel's corrected table omits her Brief's first citation to *Garrison*, which did not support the proposition for which it was cited.  (*Id.* at entry 4.)  Next, Counsel again fails to address her misquote of *Revels* for a second time.  (*Id.* at entry 9.)  Counsel next omits her incorrect citation in *Smolen*; rather than the cited proposition appearing on page 1287, it appears in a footnote on a different page.  (*Id.* at entry 11.)

While the Court certainly acknowledges that an incorrect page is not typically regarded as troublesome in the ordinary course, and the Court would not usually point out

these discrepancies, Counsel specifically stated in her Response to the Order to Show Cause that a "thorough" review of her citations was undertaken.  (Doc. 17 at 2.)  The differences cited above cause the Court to question just how "thorough" the review truly was.  It is unclear to the Court why Counsel did not take the opportunity to correct each and every citation, no matter how seemingly unimportant the differences may have been.[8]  While these discrepancies are not reasons themselves for sanctions, they bear noting as a cautionary tale to Counsel and other lawyers who may read this.  When responding to an Order to Show Cause, the responding party should take the opportunity to address the full breadth of the issue raised.  Arguably, a lawyer's duty of candor to the Court requires no less.

## IV.    CONCLUSION

The Court does not take this action lightly.  However, after considering the gravity of Counsel's actions and relevant case law, the Court imposes sanctions as discussed.

Accordingly,

**IT IS ORDERED finding** Counsel Maren Bam ("Counsel") has violated Rule 11 of the Federal Rules of Civil Procedure and **imposing sanctions** as follows:

1. The *pro hac vice* status of Counsel Maren Bam is revoked, and Counsel Maren Bam is removed as counsel of record for Plaintiff in this matter;

2. Plaintiff's Opening Brief (Doc. 13) shall be **stricken**;

3. No later than 3 business days from the date of this Order, Counsel shall serve a copy of this Order on Plaintiff;

4. No later than 10 business days from the date of this Order, Counsel shall transmit a letter to each of the three Judges to whom she attributed fictitious cases in her Opening Brief:  Hon. Douglas L. Rayes, Hon. Michael T. Liburdi, and Hon. John Z. Boyle.  In her letter, Counsel shall notify each Judge of her use of a fictitious

---

[8] Similarly, Counsel does not list in her table *Brown-Hunter*; that citation did not identify quoted language within *Brown-Hunter*.  *See Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).  As noted *supra* (Table, entry 8), this is not a basis for court action.  The Court only mentions it within the broader context of considering Counsel's "corrected" citation table.

case that was attributed to that Judge, attach a copy of her Opening Brief with the fictitious case highlighted, and a copy of this Order;

5.  No later than 10 business days from the date of this Order, Counsel shall transmit a copy of this Order to every Judge who presides over any case in which Counsel is attorney of record; and

6.  The Clerk of Court's Office is directed to serve a copy of this Order on the Washington State Bar Association, of which Counsel is a member (WSB No. 46624), so that bar association may take any action it deems appropriate.  The address is:  Washington State Bar Association, 1325 Fourth Ave., Ste. 600, Seattle, WA 98101-2539.  If Counsel is a member of any other state's bar, she shall serve a copy of this Order on that state's bar office no later than 10 business days from the date this Order is entered.

**IT IS FURTHER ORDERED** Counsel shall file a certification with this Court within 14 business days from the date of this Order, affirming Counsel has complied with Sanctions 3 through 6 above.  Failure to timely comply with this Order may result in further sanctions.

**IT IS FURTHER ORDERED** that within 45 days from the date Plaintiff is served with a copy of this Order, Plaintiff's new counsel shall file a Notice of Appearance, or if Plaintiff wishes to represent herself, Plaintiff shall file a Notice with the Court stating that she will proceed as a self-represented party.   The Court will issue an amended scheduling order after receiving that Notice.

Dated this 14th day of August, 2025.

Honorable Alison S. Bachus
United States Magistrate Judge