1  **WO**

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Argelia Esther Mavy, | No. CV-25-00689-PHX-KML (ASB) |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Attorney Maren Bam seeks permission to file an untimely appeal from a magistrate judge order which found she violated Federal Rule of Civil Procedure 11. Bam's failure to follow the basic procedures for seeking review of such an order before petitioning the Ninth Circuit for mandamus is inexplicable, but the case-specific standard for extending deadlines narrowly suggests the court should allow the untimely appeal. Reaching the merits of the appeal, Bam recklessly failed to ensure the accuracy of her citations. But *sua sponte* Rule 11 sanctions must meet a higher bar than party-initiated ones, and there are not sufficient factual findings that Bam's behavior satisfied that bar. The finding of a Rule 11 violation is vacated, as are most of the sanctions. Only those sanctions striking the opening brief and revoking Bam's pro hac vice status in this case remain in place, although on a different basis than Rule 11.

**BACKGROUND**

Shortly after this case was filed, it was referred to a magistrate judge for all pretrial proceedings. (Doc. 9.) That order told Bam the district judge was referring the case

pursuant to 28 U.S.C. § 636(b)(1), which sets out procedures for seeking a district judge's review of a magistrate judge's order. (*See* Doc. 9.)

On July 22, 2025, the assigned magistrate judge issued an order noting the opening brief signed and filed by Bam was "replete with citation-related deficiencies." (Doc. 16 at 1.) The citations suggested Bam "may have used artificial intelligence" when drafting the brief. (Doc. 16 at 1.) The magistrate judge ordered Bam to "show cause why the Court should not impose sanctions under Rule 11 . . . for submitting non-existent cases and otherwise deficient case law citations to the Court." (Doc. 16 at 4.)

Bam's response explained her firm "utilizes experienced, licensed attorneys in good standing with their state bar to assist with the preparation of . . . opening and reply briefs." (Doc. 17 at 2.) The opening brief in this case had been "drafted by an attorney who owns and operates her own social security disability law practice" and was employed by Bam's firm as an independent contractor starting in November 2024. (Doc. 17 at 3.) On May 9, 2025, Bam's office circulated an announcement regarding artificial intelligence issued by the Chief Judge of the District of New Mexico. (Doc. 17 at 3.) That announcement stated in relevant part: "While acknowledging the potential benefits of AI, the Court has observed instances of AI-generated arguments and citations to non-existent cases, a practice that is strictly prohibited and may result in sanctions to uphold the integrity of the judicial system." (Doc. 17-3 at 1.) Bam's office asked the contract attorney to "respond to this email confirming that you have received it and acknowledged the information provided within it." (Doc. 17-4 at 1.) That same day, the attorney responded, "I have received the email . . . and acknowledge the information provided within it." (Doc. 17-4 at 1.)

The contract attorney was drafting the opening brief in this case at around the same time she emailed her response. (Doc. 17 at 3-4.) On May 18, 2025, the attorney submitted the brief to "an on-staff supervising attorney" for internal review, the first layer of review at Bam's firm. (Doc. 17 at 2-3.) During these reviews, supervising attorneys are tasked with reviewing "the brief's legal arguments, formatting, and citations" to "ensure[] the brief is legally sound" and "spot-check[ing] the legal authorities and citations outlined in

the brief." (Doc. 17 at 2-3.) Bam performs a "Final Sign-off" before filing. (Doc. 17 at 3.) The supervising attorney purportedly reviewed the opening brief in this matter but failed to identify any of the troubling citations. (Doc. 17 at 4.) Bam then "personally reviewed and edited" the opening brief but also failed to identify the citation errors. (Doc. 17 at 3.) Given the extent of incorrect citations scattered throughout the opening brief (*see* Doc. 16), the reviews by the supervising attorney and Bam must have been extremely limited. A cursory "spot-check" of even a handful of the brief's citations would have uncovered the errors. Bam does not explain how her review process could fail to this extent. Although she states she and the supervising attorney "were not on the same page regarding the firm's procedure" (Doc. 17 at 4), that disconnect related to internal deadlines rather than standards of review (Doc. 17-8). It is undisputed the opening brief was filed despite its non-existent citations and that Bam was the only attorney who signed it.

On receiving the magistrate judge's order identifying the citation errors, Bam "initiated a thorough internal review of the brief . . . as well as other work submitted by [the same] contract writer." (Doc. 17 at 4.) Bam also prepared a "citation correction table identifying the problematic citations, their intended propositions, and the accurate authorities that should have been cited" and requested leave to file an amended opening brief. (Doc. 17 at 6.) Despite acknowledging the errors were "deeply concerning and contrary to the standard of advocacy [Bam's] firm strives to uphold," Bam stated she had not "knowingly submitted false or non-existent citations" and did not "intend to mislead the Court or submit citations not grounded in valid legal authority." (Doc. 17 at 1, 5.)

On August 14, 2025, the magistrate judge ruled Bam had violated Rule 11 by filing the opening brief with incorrect and hallucinated citations. (Doc. 18.) In reaching that conclusion, the magistrate judge found "well over the majority of the citations" in the opening brief "were fabricated, misleading, or unsupported." (Doc. 18 at 9.) Based on the number of errors, it was "apparent to [the magistrate judge] that [Bam] did not review the citations." (Doc. 18 at 10-11.) And because Bam "failed to conduct any review whatsoever that [the cited cases] were valid or that the arguments she was making were legally

tenable," Bam's "conduct squarely [ran] afoul of Rule 11's mandate." (Doc. 18 at 12.)

For present purposes, two aspects of the sanctions order are particularly important. First, the magistrate judge noted the standard for sanctions under Rule 11 "is applied with particular stringency where . . . the sanctions are imposed on the court's own motion." (Doc. 18 at 13 (quoting *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001)).) In that context, sanctions are permissible only "in situations that are akin to a contempt of court." (Doc. 18 at 13 (citations omitted).) According to the magistrate judge, that "akin to a contempt" standard was satisfied because the opening brief was "riddled with fabricated, misleading, or unsupported citations" such that without them, "entire sections of the [brief's] 'Analysis' [were] nearly wholly unsupported, and clearly, there was no reasonable inquiry made into its contents." (Doc. 18 at 14.)

The second critical aspect of the magistrate judge's sanctions order is an explicit finding that Bam had not acted in subjective bad faith. The magistrate judge explained she was not "go[ing] so far as to find [Bam] acted with subjective bad faith" but that Bam's actions nonetheless "rise to the level of Rule 11 sanctions." (Doc. 18 at 22.)

Having found Bam's citations violated Rule 11, the magistrate judge imposed six sanctions:

1. Revoking Bam's pro hac vice status for this case;
2. Striking the opening brief;
3. Requiring Bam provide her client with a copy of the sanctions order;
4. Requiring Bam "write a letter to the three [District of Arizona] Judges to whom she attributed fictitious cases . . . notifying them of her use of fake cases with their respective names attached";
5. Requiring Bam send a copy of the sanctions order "to every Judge who presides over any case in which [Bam] is attorney of record"; and
6. Directing the Clerk of Court to send a copy of the sanctions order to the Washington State Bar Association.

(Doc. 18 at 19.)

- 4 -

Pursuant to Federal Rule of Civil Procedure 72(a), Bam had 14 days to "serve and file objections" to the August 14 order imposing sanctions. Rule 72(a) also contains the standard a litigant must meet for district judge reconsideration of a magistrate judge's nondispositive order. *See* Fed. R. Civ. P. 72(a) ("The district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). Thirteen days after the sanctions order, Bam—now appearing through counsel, Nellie Barnard—filed a motion seeking to stay only sanction five and for an extension of time to seek reconsideration. (Doc. 20 at 1, 4.) The magistrate judge granted that motion, giving Bam until September 11, 2025, to file a motion for reconsideration. (Doc. 21.) On September 11, 2025, Bam filed such a motion, asking the magistrate judge to reconsider the imposition of sanctions. (Doc. 22; *see* Doc. 25.) The magistrate judge denied that motion on September 26, 2025. (Doc. 27.) Bam then opted to pursue a petition for writ of mandamus with the Ninth Circuit instead of seeking review by the district judge.

On October 1, 2025, Bam filed a motion to stay sanction five pending resolution of her planned petition for writ of mandamus. (Doc. 28.) The magistrate judge was not available to decide that motion before compliance with the sanction was required (Doc. 28 at 3), so the district judge reviewed the motion and issued a written order staying sanction five (Doc. 32). Bam filed her petition for writ of mandamus and, on October 30, 2025, the Ninth Circuit issued an order noting Bam's failure to seek review of the sanctions order by the district judge might undermine her mandamus petition. (*See* Doc. 34.) Based on the Ninth Circuit's order, on November 7, 2025, Bam filed in this court a motion for extension of time to seek review by the district judge as well as the untimely motion seeking such review. (Docs. 35, 37.) The Ninth Circuit stayed consideration of the petition for writ of mandamus pending resolution of Bam's motions. (Doc. 40.)

## ANALYSIS

### I.    Motion for Extension of Time

Bam's first motion is "for relief from the expired deadline" to allow her "to seek reconsideration pursuant to 28 U.S.C. § 636(b)(1)(A)." (Doc. 35 at 2.) As with so many of

Bam's filings, her motion for extension of time contains puzzling and dubious positions.

The first is that Bam repeatedly identifies October 10 as the "expired deadline" from which she seeks relief. (Doc. 35 at 8, 9, 11.) That date was fourteen days after the magistrate judge's September 26, 2025 order denying reconsideration. But Bam's true target—as made clear in her proposed second motion for reconsideration—is the "order of August 14, 2025, imposing sanctions." (Doc. 37 at 6.) Therefore, the "expired deadline" from which Bam seeks relief is August 28 (*i.e.*, fourteen days after the August 14 sanctions order) or September 11 (*i.e.*, the extended deadline Bam obtained for filing a motion for reconsideration). Bam's current motion filed on November 7 is therefore seeking extension of a deadline that expired no later than September 11. Bam's argument that the relevant period is "short, not exceeding one month," is inaccurate. (Doc. 35 at 11.)

The next oddity within Bam's motion is that she presents separate arguments under two allegedly-separate standards to establish she is entitled to an extension of time. Bam first argues she has satisfied the "good cause" standard required by Local Rule 7.2(g). (Doc. 35 at 7-8.) That local rule provides that "[a]bsent good cause shown," a motion for reconsideration must be filed within fourteen days of the order. The second standard Bam addresses is "excusable neglect," found in Fed. R. Civ. P. 6(b)(1)(B). (Doc. 25 at 10.) That rule allows a court to grant an extension "for good cause . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Bam does not explain how she believes the "good cause" requirement of Local Rule 7.2(g) and the "excusable neglect" requirement of Rule 6 interact. But it appears "excusable neglect" is the only relevant threshold because, in general, "good cause" is a lower standard than "excusable neglect." *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259-62 (9th Cir. 2010) (good cause is "non-rigorous standard that has been construed broadly"). A finding of "excusable neglect" under Rule 6 would necessarily seem to satisfy the "good cause" standard of Local Rule 7.2(g), so the court addresses only the former.

Turning to the merits of the motion for extension of time, assessing "excusable

neglect" under Rule 6 requires the court focus on "the context of the particular case" because there is "no rigid legal rule against late filings attributable to any particular type of negligence." *Pincay v. Andrews*, 389 F.3d 853, 859-60 (9th Cir. 2004) (en banc). In conducting its analysis, the court must weigh equitable factors including "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Id.* at 855.

The first factor requires assessing possible prejudice to the non-moving party. Neither plaintiff—now represented by new counsel—nor defendant in the underlying social security appeal opposes Bam's request for an extension, suggesting neither party believes prejudice will result. The absence of possible prejudice weighs in favor of granting Bam's request.

The second factor requires examining the length of delay and its impact on judicial proceedings. Bam describes the delay as "short, not exceeding one month," but as explained earlier, that is inaccurate. (Doc. 35 at 11.) The correct delay of approximately two months is not extremely long, but it significantly exceeds the amount of time in many other cases involving excusable neglect. *See, e.g.*, *Ahanchian*, 624 F.3d at 1255 (delay of three days). And the two-month delay in this case is particularly troublesome based on the context of the underlying order Bam now wishes to appeal.

Rule 72(a) places a time limit on seeking review of a magistrate judge's order. That rule provides "[a] party may serve and file objections to" an order by the magistrate judge involving nondispositive matters "within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). That relatively short time limit recognizes appeals of magistrate judge orders often involve matters that require quick resolution to avoid unnecessary complications. For example, if a magistrate judge order forbids certain discovery, a timely appeal of that ruling allows the case to remain on track. An untimely appeal—like one filed two months after the deadline—risks derailing pretrial proceedings. Routinely excusing delays of two

months in the context of appeals from magistrate judge orders could cause significant confusion and complication, undermining the reasons why cases are referred.

The delay is also troubling in this case because of the significant judicial resources Bam has consumed after the sanctions were imposed. After that order, the magistrate judge had to resolve a motion for extension of time and a motion for reconsideration. Bam then filed a second motion to stay just a few days before she believed deadlines were expiring during a time when the magistrate judge was unavailable, requiring action by the district judge. After filing her petition for writ of mandamus, the court of appeals had to issue an order seeking an explanation of Bam's failure to seek review by the district judge. And Bam's current motions require the district judge expend yet more time attempting to untangle the mess made by Bam and Barnard. Had Bam *or* Bernard researched basic procedures regarding appeals of magistrate judge orders, most of the post-sanctions filings could have been eliminated. The failure to conduct that research has frustrated a central "policy behind the Magistrate's Act, i.e., to relieve courts of unnecessary work and to improve access to courts." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1175 (9th Cir. 1996) (simplified). The second factor weighs against a finding of excusable neglect.

The third factor looks to "the reason for the delay, including whether it was within the reasonable control of the movant." *Pincay*, 389 F.3d at 855. Barnard explains the reason for the delay was her "failure to find [*Cole v. U.S. Dist. Ct. for Dist. Of Idaho*, 366 F.3d 813, 818-20, 822-23 (9th Cir. 2004)] in her legal research." (Doc. 35 at 12.) Had Barnard uncovered that case, she allegedly would have realized she "could (and likely should) file a motion for reconsideration . . . pursuant to 28 U.S.C. 636(b)(1)(A) before petitioning the Ninth Circuit [for] relief." (Doc. 35 at 12.) This argument appears to misunderstand basic aspects of referrals to magistrate judges.

Procedures in cases referred to a magistrate judge for pretrial matters are uncomplicated, such that pro se prisoners routinely successfully navigate them. The statute authorizing referrals—which the court had explicitly referenced months earlier—provides a district judge "may reconsider any pretrial matter" decided by the magistrate judge

"where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Rule 72(a) provides the deadline by which review by the assigned district judge must be pursued. And "a party who fails to file timely objections to a magistrate judge's nondispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order." *Simpson*, 77 F.3d at 1174. Thus, in almost every context, a competent attorney would seek review by the district judge before resorting to a petition for writ of mandamus even in the absence of any circuit precedent requiring she do so. Immediately pursuing mandamus was a drastic decision that cannot be explained merely by counsel not discovering *Cole*. Rather, it appears counsel lacked a basic understanding of the procedural posture of the case and the structure of the federal court system.

But even counsel's incompetence here does not preclude relief, because egregious errors can be excused in certain circumstances. As noted by the Supreme Court, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 392 (1993) (simplified). Although that is "usually" the case, the Ninth Circuit has affirmed a district court's finding of excusable neglect—and has itself found excusable neglect—where a lawyer made obvious mistakes involving straightforward matters. For example, the Ninth Circuit affirmed a district court's finding of excusable neglect where a paralegal had miscalculated an appeal deadline leading to a document being filed approximately three weeks late. *Pincay v. Andrews*, 351 F.3d 947, 949 (9th Cir. 2003), *vacated on reh'g en banc*, 389 F.3d 853 (9th Cir. 2004); *see also M.D. by & through Doe v. Newport-Mesa Unified Sch. Dist.*, 840 F.3d 640, 643 (9th Cir. 2016) (excusable neglect for filing being two days late because "counsel simply misunderstood a docket entry and made a calendaring error of the type that is sometimes committed even by sophisticated law firms"). Similarly, the Ninth Circuit itself found excusable neglect sufficient to excuse a delay of approximately one month when an attorney did not respond to a motion for summary judgment because of "jet lag and the time it took to sort through

- 9 -

the mail that had accumulated while he was away." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-25 (9th Cir. 2000). And the Ninth Circuit, again conducting the equitable analysis itself, found "excusable neglect" where "a calendaring mistake and computer problems" led to a summary judgment opposition being filed three days late. *Ahanchian*, 624 F.3d at 1255; *see also Lemoge v. United States*, 587 F.3d 1188, 1191, 1196 (9th Cir. 2009) (finding excusable neglect based on attorney's "medical complications"). By contrast, the Ninth Circuit affirmed a district court's refusal to find excusable neglect when an attorneys' fees application was filed fifteen days late as the result of a "deliberate decision to postpone the fee application because of the 'strange' procedural posture of the case and to avoid duplicative filings." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 972 (9th Cir. 2007).

Bam and Barnard's behavior falls on the extreme end of attorney mistakes. The failure to understand how magistrate judge referrals operate is an obvious error, particularly when a quick glance at the docket points to the relevant statute. And a delay measured in weeks or months is significantly longer than most of the periods in the published cases. There is, however, no evidence that the untimely filing was the result of a deliberate decision—a consideration critical in many Ninth Circuit cases—and even extreme errors can establish excusable neglect. Overall, the third factor weighs slightly in favor of granting the extension of time.

The fourth factor looks to whether Bam's conduct was in good faith. The failure to seek the district judge's review was the product of incompetence here, not bad faith. This factor supports Bam's request.

An attorney's failure to read and follow the applicable rule regarding the time to take an appeal is "one of the least compelling excuses that can be offered." *Pincay*, 389 F.3d at 859. The failure by Bam and Barnard to understand the basic operation and timing of 28 U.S.C. § 636 and Rule 72 is similar. But granting the extension will not delay the underlying litigation more than it has already been delayed and there is no evidence of deliberate gamesmanship or bad faith. Based on those considerations, and recognizing the

1    closeness of the equitable analysis here, the motion for extension of time is granted.

2    ## II.    Merits of Sanctions Order

3    Bam presents a wide variety of arguments in seeking reversal of the sanctions order,

4    but the court need only address one: the findings necessary to support *sua sponte*

5    sanctions.[1] Viewed under Rule 72(a)'s standard, the magistrate judge did not make the

6    requisite findings to support *sua sponte* sanctions and the record as presented does not

7    contain other evidence supporting such findings.

8    "Rule 11 sanctions may be imposed only in response to claims that are not

9    'warranted by existing law or by a nonfrivolous argument for the extension, modification

10    or reversal of existing law.'" *United Nat. Ins. Co.*, 242 F.3d at 1115 (quoting Fed. R. Civ.

11    P. 11(b)(2)). Rule 11 contains a "safe harbor" provision that applies to party-initiated

12    sanctions requests. That safe harbor "allow[s] lawyers to correct or withdraw their

13    challenged filings" to avoid imposition of sanctions. *Id.* at 1116. There is no such safe

14    harbor when a court pursues sanctions *sua sponte*. "In light of this important distinction,

15    *sua sponte* sanctions will ordinarily be imposed only in situations that are *akin to a*

16    *contempt of court*." *Id.* (simplified).

17    There is little Ninth Circuit case law analyzing this "akin to a contempt" standard

18    in the context of *sua sponte* Rule 11 sanctions. But the Ninth Circuit appears to consider it

19    identical to the "akin to a contempt" standard applicable to *sua sponte* sanctions for

20    violating bankruptcy Rule 9011, citing cases analyzing the two—and *sua sponte* sanctions

21    under the court's inherent power—interchangeably. *See Rocha v. Fiedler*, No. 24-3692,

22    2025 WL 1219007, at *1 (9th Cir. Apr. 28, 2025) (citing *In re Lehtinen*, 564 F.3d 1052,

23    1061 (9th Cir. 2009), *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001), and *Toombs v.*

24    *Leone*, 777 F.2d 465, 471 (9th Cir. 1985)). Although there may be important differences

25    between the standards, what matters here is this: in the Ninth Circuit, the "akin to a

26    contempt" standard "generally requires the court to find bad faith or conduct tantamount

27

28    _____

[1] To make it plainer: the court explicitly declines to find that the opening brief was not frivolous or that Bam's slapdash inquiry into the citations into the brief she solely signed was "reasonable under the circumstances." (Doc. 37 at 14-18.)

to bad faith." *Rocha*, 2025 WL 1219007, at *1 (simplified). Counsel's ignorance, negligence, or recklessness alone does not meet this standard, and must be "combined with an additional factor such as frivolousness, harassment, or an improper purpose" to be "tantamount to bad faith." *Fink*, 239 F.3d at 993-94; *see also In re Vizconde*, 715 F. App'x 630, 631 (9th Cir. 2017) ("akin to a contempt" standard met where individual "knowingly and willfully participated in and facilitated the abuse and bad faith manipulation of the bankruptcy process"); *Sanai v. Sanai*, 408 F. App'x 1, 3 (9th Cir. 2010) ("akin to a contempt" standard met based on "express finding [appellants] had acted in bad faith"); *Gonzales v. Texaco Inc.*, 344 F. App'x 304, 309 (9th Cir. 2009) (district court erred by applying "'reasonableness' standard, which is the appropriate standard for party-initiated, but not court-initiated, Rule 11 sanctions"). And although a court need not expressly find "bad faith" or "conduct tantamount to bad faith," without an explicit finding the record must support "a conclusion that the sanctioned attorney acted in bad faith." *Lehtinen*, 564 F.3d at 1061 & n.3.

The magistrate judge made specific findings that Bam's actions were "akin to a contempt" but also that Bam had not "acted with subjective bad faith." (Doc. 18 at 14, 22.) Those findings mean *sua sponte* sanctions were permissible only if there were facts supporting that Bam's behavior qualified as "tantamount to bad faith." *Rocha*, 2025 WL 1219007, at *1. The sanctions order does not make detailed findings on this point and although it is possible such a finding could be made if the record were developed further, the existing evidence does not support that Bam's actions were "tantamount to bad faith."

Before the order to show cause issued in this case, Bam required all contract attorneys to acknowledge the announcement from the District of New Mexico that cautioned against the use of artificial intelligence. (*See* Doc. 17-3.) There is no evidence establishing it was unreasonable for Bam to accept the contract attorney's acknowledgment that she had reviewed that information. Bam claims the opening brief went through two layers of review, one involving a supervisory attorney and the other a personal review by Bam (Doc. 17 at 2-4; Doc. 23 at 2-3), and her avowal is unrebutted in the record. There is

no dispute that process broke down here, raising significant concerns that Bam's internal review process was so cursory as to amount to a rubber stamp. A system that does not detect failures of the magnitude reflected in the opening brief must be redesigned, particularly with Bam now on notice that she risks sanctions if she files future briefs containing hallucinated citations. *See Mata v. Avianca*, Inc., 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (finding subjective bad faith where attorneys continued to cite hallucinated cases after court order notified them of hallucinated cases). But warning the attorney not to use artificial intelligence and subjecting the brief to two layers of review would ordinarily be reasonable precautions for an attorney not already on notice that her firm's review structure and practices were flawed, and not "outrageously improper, unprofessional and unethical" so as to support a "tantamount to bad faith" finding. *Rocha*, 2025 WL 1219007, at *1; *see also United States v. Cohen*, 724 F. Supp. 3d 251, 258-59 (S.D.N.Y. 2024) (no subjective bad faith where attorney believed inaccurate case citations had been provided by another lawyer). Bam's conduct reflected recklessness, but recklessness alone is not "tantamount to bad faith." *Fink*, 239 F.3d at 993-94.

Another aspect of Bam's behavior that undermines a finding of "tantamount to bad faith" is her conduct after learning of problems with the contract attorney's work. When the original order to show cause issued, Bam immediately pursued an investigation to determine what had happened. (Doc. 17 at 2.) In responding to the order to show cause, Bam did not attempt to defend the opening brief but submitted a proposed brief containing correct citations. (*See* Doc. 17-14.) Bam proactively investigated the contract attorney's work in different cases and found "four other briefs containing erroneous citations." (Doc. 26 at 4.) In two of those cases, Bam "voluntarily disclosed the erroneous citations to the court and moved to strike the citations or amend the brief." (Doc. 26 at 4.) In the other two cases, Bam responded to orders to show cause and corrected the citations. (Doc. 26 at 4.) Bam's actions suggest recklessness but not something more.

There are no other facts showing Bam's actions were "tantamount to bad faith" and the finding of a Rule 11 violation is therefore vacated. This is not to say that Bam's conduct

1  was appropriate or even met basic standards of advocacy. *Cf. Townsend v. Holman*
2  *Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990) ("legal arguments advanced by
3  counsel do not violate Rule 11 simply by virtue of the fact that counsel's conduct does not
4  comport with ethical rules of the American Bar Association"). Bam's conduct likely would
5  have been sufficient to support Rule 11 sanctions if the opposing party had raised the issue
6  and Bam did not take advantage of the safe harbor. *See Park v. Kim*, 91 F.4th 610, 615 (2d
7  Cir. 2024) ("submission of a brief relying on non-existent authority reveals [the attorney]
8  failed to determine that the argument she made was legally tenable") (simplified). Bam's
9  conduct might even have been sufficient to support issuance of *sua sponte* sanctions if an
10 additional factual inquiry had undermined Bam's claims about the behavior that led up to
11 the filing of the brief. But on this record, explanations exist—incompetence, carelessness,
12 recklessness—that undermine an "akin to a contempt" finding.

13      Although the finding of a Rule 11 violation cannot be sustained, the court does not
14 reinstate the opening brief or restore Bam's pro hac vice status. The standard for revoking
15 pro hac vice status does not require the court find Bam acted in bad faith. Rather, pro hac
16 vice status may be revoked "based on criteria reasonably related to promoting the orderly
17 administration of justice." *In re United States*, 791 F.3d 945, 957 (9th Cir. 2015). Only an
18 exceptionally careless attorney could have filed an opening brief containing the number
19 and nature of incorrect citations present here. Bam's carelessness has impaired "the ethical
20 and orderly administration of justice" and her former client's interests, wasting resources
21 at every level of the federal judiciary short of the Supreme Court. *United States v. Ries*,
22 100 F.3d 1469, 1471 (9th Cir. 1996). Although not in bad faith, the departure from
23 professional standards required to submit such a filing supports revocation of Bam's pro
24 hac vice status. And both revoking Bam's pro hac vice status and the errors riddling the
25 pleading justify striking the opening brief Bam filed. *See Grant v. City of Long Beach*, 96
26 F.4th 1255, 1256 (9th Cir. 2024) (striking in entirety opening brief containing fabricated
27 case law).

28

1    Accordingly,

2    **IT IS ORDERED** the Motion for Extension of Time (Doc. 35) is **GRANTED**.

3    **IT IS FURTHER ORDERED** the Motion for Reconsideration (Doc. 37) is

4    **GRANTED**. The order imposing Rule 11 sanctions (Doc. 18) is **VACATED** except the

5    opening brief remains stricken and attorney Maren Bam's pro hac vice status remains

6    revoked for purposes of this case.

7    **IT IS FURTHER ORDERED** all other matters remain referred to the magistrate

8    judge.

9    **IT IS FURTHER ORDERED** the Clerk of Court shall forward a copy of this order

10   to the Court of Appeals for the Ninth Circuit, referencing Case Number 25-6248.

11   Dated this 13th day of January, 2026.

12

13

14   _____

15   Honorable Krissa M. Lanham
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28